UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ROBERT H.,

        Plaintiff,

v.

NANCY A. BERRYHILL, Deputy
Commissioner of Social Security
Operations,

        Defendant.

Case No. 3:17-cv-05691-TLF

ORDER REVERSING
DEFENDANT'S DECISION TO
DENY BENEFITS AND
REMANDING FOR FURTHER
PROCEEDINGS

Plaintiff has brought this matter for judicial review of defendant's denial of his application for a period of disability and disability insurance benefits. The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73; Local Rule MJR 13. For the reasons set forth below, the undersigned reverses defendant's decision to deny benefits.

FACTUAL AND PROCEDURAL HISTORY

On November 9, 2015, plaintiff filed an application for a period of disability and disability insurance benefits. Dkt. 6, Administrative Record (AR) 18. He alleged that he became disabled beginning January 1, 2014. AR 49 (plaintiff verbally amended the application to this

ORDER REVERSING DEFENDANT'S DECISION TO
DENY BENEFITS AND REMANDING FOR FURTHER
PROCEEDINGS - 1

date of onset). The application was denied by the Social Security Administration on February 11, 2016, and reconsideration was denied on March 17, 2016. AR 18, 125. A hearing was held before an administrative law judge ("ALJ"), at which plaintiff appeared and testified, as did a vocational expert. AR 18.

The ALJ found in a decision on March 9, 2017, that plaintiff could perform some jobs existing in significant numbers in the national economy and therefore that he was not disabled. AR 39-40. Plaintiff's request for review was denied by the Appeals Council on June 27, 2017, making the ALJ's decision the final decision of the Commissioner. AR 1. Plaintiff appealed to this Court on August 31, 2017. Dkt. 1; 20 C.F.R. § 404.981.

The ALJ resolved steps one and two of the five-step analysis in plaintiff's favor. AR 20. The ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset of his disability and that he had the following severe impairments: obstructive sleep apnea, carpal tunnel syndrome, degenerative disc disease of the lumbar and cervical spine, hearing loss or tinnitus, generalized anxiety disorder, depressive disorder or major depressive disorder, and cluster B traits. AR 20. At step three, the ALJ found that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. AR 21.

In assessing the plaintiff's residual functional capacity (RFC), the ALJ found that he had the residual functional capacity

> **to perform light work as defined in 20 CFR 404.1567(b). He can lift 20 pounds at a time and can frequently lift or carry 10 pounds. He can stand or walk for six hours and sit for six hours in an eight-hour workday. The claimant has unlimited pushing or pulling within the light exertional level. He should never climb ladders, ropes, or scaffolds but can frequently climb ramps or stairs. The claimant can frequently stoop, crouch, kneel, and crawl. He can occasionally reach overhead bilaterally. He can frequently handle and finger. The claimant should avoid concentrated exposure to hazards**

> **such as the use of moving machinery or unprotected heights. The claimant
> can understand, remember, and apply simple job instructions. He can
> perform simple, routine, repetitive tasks. He can have simple and occasional
> decision-making. He can have simple and occasional changes in the work
> setting. The claimant can maintain attention and concentration for two-hour
> intervals to complete tasks, being off-task no more than 10% of the time. He
> can have brief, superficial interaction with the public. He can have
> superficial interaction with coworkers. The claimant can accept instructions
> from supervisors.**

AR 24 (emphasis in original). Using this assessment of the plaintiff's RFC, the ALJ found at step five that plaintiff was not disabled, because the ALJ determined there were a number of jobs that exist in significant numbers in the national economy that plaintiff could perform. AR 39-40.

Plaintiff seeks reversal of the ALJ's decision and remand for an award of benefits. He alleges that the ALJ erred:

(1) in evaluating the medical evidence;

(2) in weighing plaintiff's subjective symptom testimony;

(3) in discounting the statements of two lay witnesses;

(4) in assessing plaintiff's residual functional capacity; and

(5) in finding plaintiff could perform other jobs existing in significant numbers in the national economy.

For the reasons set forth below, the Court finds that the ALJ's decision should be reversed and the matter remanded for further administrative proceedings.

## DISCUSSION

The Court will uphold an ALJ's decision unless: (1) the decision is based on legal error; or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir.

ORDER REVERSING DEFENDANT'S DECISION TO
DENY BENEFITS AND REMANDING FOR FURTHER
PROCEEDINGS - 3

1988)). This requires "'more than a mere scintilla,'" though "'less than a preponderance'" of the evidence. *Id.* (quoting *Desrosiers*, 846 F.2d at 576).

The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court is required to weigh both the evidence that supports, and evidence that does not support, the ALJ's conclusion. *Id.* The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* Only the reasons identified by the ALJ are considered in the scope of the Court's review. *Id.*

"If the evidence admits of more than one rational interpretation," that decision must be upheld. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). That is, "[w]here there is conflicting evidence sufficient to support either outcome," the Court "must affirm the decision actually made." *Allen*, 749 F.2d at 579 (quoting *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).

A.   The ALJ's Evaluation of the Medical Opinion Evidence

Plaintiff asserts that the ALJ erred in addressing every medical opinion the ALJ considered. Dkt. 10, pp. 3-10; *see* AR 33-37. The Court concludes that the ALJ erred in addressing the opinion evidence pertaining to both psychological and physical limitations and to the VA's disability ratings. The errors are not harmless and therefore, the Court reverses and remands this case for further proceedings.

   1.   Plaintiff's Mental Conditions

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where the evidence is inconclusive, "questions of credibility and resolution of conflicts are functions solely of the [ALJ]." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). In such situations, "the ALJ's conclusion must be upheld." *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the evidence "are material (or

are in fact inconsistencies at all) and whether certain factors are relevant to discount" medical opinions "falls within this responsibility." *Id.* at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." *Reddick*, 157 F.3d at 722. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* at 725. The ALJ also may draw inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642. Further, the Court may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). Even when a treating or examining physician's opinion is contradicted, an ALJ may only reject that opinion "by providing specific and legitimate reasons that are supported by substantial evidence." *Id.*

However, the ALJ "need not discuss *all* evidence presented" to him or her. *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." *Id.* Essentially, "an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without an explanation that another medical opinion is more persuasive, or criticizing it with boiler plate language that fails to offer a substantive basis for his conclusion." *Garrison v. Colvin*, 759 F.3d 995, 1012-1013 (9th Cir. 2014).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). On the other hand, an ALJ need not accept the opinion of a treating physician if that opinion is brief, conclusory, and inadequately supported by medical findings or by the record as a whole. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." *Id.* at 830-31.

*Examining Psychologist: Terilee Wingate, Ph.D.*

Dr. Wingate performed a psychological evaluation of plaintiff in February 2016. AR 733. She reviewed two treatment notes, recounted plaintiff's history and reports about his daily activities, and conducted a clinical interview and mental status exam. AR 733-35. She observed that plaintiff showed a mildly dysphoric mood, as well as poor memory and "attention to task." AR 735. Dr. Wingate's findings on the mental status exam were otherwise unremarkable. *Id.*

Dr. Wingate diagnosed plaintiff with "Major Depressive Disorder, recurrent, moderate," "Unspecified Anxiety Disorder," and "Cluster B Personality Traits," and made a "rule out" diagnosis of neurocognitive disorder. AR 736. She opined that plaintiff

> is able to understand, remember and learn simple tasks. He has difficulty learning and remembering complex tasks. He cannot sustain attention to tasks throughout a daily or weekly work schedule without interruption from anxiety, depressed mood, fatigue and anger. He has poor stress tolerance and when pressures are placed upon him he will withdraw. He has sufficient judgment to avoid hazards and make work decisions. He can probably interact with a supervisor and a few coworkers, although he reported that he is sensitive to criticism of others and this could impact his behavior at work. He would probably not function well with a lot of coworkers or the general public.

AR 736-37.

The ALJ gave Dr. Wingate's opinions "[p]artial weight." AR 37. He found that Dr. Wingate's opinion that plaintiff "cannot sustain tasks through a weekly work schedule is inconsistent with the supported evidence of record," which showed plaintiff "with good results with medication management." *Id.* He noted Dr. Clifford and Dr. Comrie's opinions, which did not indicate that plaintiff is limited in the ways Dr. Wingate opined. *See* AR 94, 110. And the ALJ noted that plaintiff "has been sustaining school work for weeks and months at a time," albeit with a "brief and temporary" interruption in December 2015. The ALJ found that interruption was "not indicative of the claimant's functioning overall on a long-term basis." *Id.* Finally, the ALJ stated that the RFC accommodated some interruptions to plaintiff's weekly work schedule in that it allowed for plaintiff to be off task up to 10 percent of the time. *Id.*

Plaintiff contends that Dr. Wingate based her opinion on her clinical findings and that these were consistent with her opinion. Plaintiff asserts that the ALJ's finding that plaintiff had good results with medication did not contradict Dr. Wingate's opinion. He asserts that plaintiff's ability to attend school "with problems" was consistent with Dr. Wingate's opinion, and that Dr. Comrie and Dr. Clifford's opinions should have received less weight because, unlike Dr. Wingate, they did not examine plaintiff. Dkt. 10, p. 4.

The Court agrees that the ALJ failed to adequately consider Dr. Wingate's examining opinion and failed to offer specific, legitimate, and supported reasons to reject it.

Social Security Administration (SSA) regulations require the ALJ to consider an opinion's consistency "with the record as a whole" in weighing the opinion. 20 C.F.R. § 404.1527(c)(4).

Here, substantial evidence does not support the ALJ's finding of inconsistency between Dr. Wingate's opinion that plaintiff "cannot sustain tasks through a weekly work schedule" and other evidence showing "good results with medication management." AR 37.

First, the ALJ could not rely exclusively on the opinions of non-examining doctors Comrie and Clifford to reject the examining opinion of Dr. Wingate. In their form opinions after reviewing plaintiff's records, Dr. Comrie and Dr. Clifford contradicted Dr. Wingate's opinion about plaintiff's ability to sustain work. AR 94, 110. But "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995). For an ALJ to give a non-examining medical source's opinion greater weight than the opinion of an examining medical source, the ALJ must also rely on independent record evidence supporting the non-examining opinion. *Id.* at 831 (citing *Magallanes v. Bowen*, 881 F.2d 747, 751–55 (9th Cir.1989)). The ALJ failed to locate substantial evidence in the record that supported Drs. Comrie and Clifford's assessment of plaintiff's ability to sustain tasks.

As he did elsewhere in his analysis, the ALJ relied largely on plaintiff's "full time" attendance at school to reject Dr. Wingate's opinion about plaintiff's ability to sustain tasks. But the record contains few details about plaintiff's attendance at school, and the details it does contain suggest that plaintiff struggled there. Two providers noted that plaintiff reported he was attending school full-time, and plaintiff also testified he was attending school full time. AR 60-62, 68-69 (testimony on difficulties in school), 641 (in school full time, April 2015), 652 ("doing well in school," December 2014), 735 ("he says he is enrolled in the [school] disability program but he is failing all his classes"), 749 (in school full time, February 2016). The record does not indicate how much time plaintiff spent in class or on homework. Plaintiff testified that he

ORDER REVERSING DEFENDANT'S DECISION TO
DENY BENEFITS AND REMANDING FOR FURTHER
PROCEEDINGS - 8

struggled in school, had a 2.46 GPA, and had received an academic warning. AR 60-62, 68-69. He also testified that he was allowed accommodations in his classes, in that he can stand up whenever he wants, arrive late to class, or even miss class, although he "can't not show up all the time." AR 62. Even without considering the period in late 2015 when plaintiff dropped out of school, this evidence cannot support the ALJ's inference that plaintiff's attendance at school contradicts Dr. Wingate's opinion that he would have trouble sustaining tasks throughout a full-time work week. *See* AR 37; *see also Duggan v. Berryhill*, No. 3:17-CV-5451-BAT, 2017 WL 5415928, at *5 (W.D. Wash. Nov. 13, 2017) (holding ALJ improperly rejected examining doctor's opinion based on plaintiff's "full time" school attendance, where record showed that school offered accommodations and more relaxed schedule than full-time workweek).

The ALJ also relied on a finding that plaintiff showed "good results with medication management." AR 37. The ALJ did not cite any support for this finding. *Id.* The ALJ may have meant to incorporate his prior discussion of plaintiff's mental-health history and history of medication use. AR 31-32. Nonetheless, that discussion does not provide a specific and legitimate reason to discount Dr. Wingate's opinions.

In that discussion, the ALJ observed that plaintiff's providers noted in a March 2015 phone call that he had "no current problems or complaints." AR 31, 646. The ALJ also discussed plaintiff's side effects—including light headedness and cotton mouth—but found they were "largely mild." AR 31. He cited a normal mental-status exam from December 2015 and a note from October 2016 stating plaintiff "continue[d] to show good response to his current medications." AR 2119, 2624. (The provider nonetheless doubled plaintiff's medication for panic attacks. AR 2624.)

ORDER REVERSING DEFENDANT'S DECISION TO
DENY BENEFITS AND REMANDING FOR FURTHER
PROCEEDINGS - 9

The ALJ also acknowledged notes that seem to contradict his finding of "good results": observations of restlessness, nervousness, agitation, and pressured speech, AR 622, 711, 750, 752; reports of severe side effects, AR 681, 735, 1833; plaintiff dropping out of school, AR 1833; reports of increased depression and overwhelming anxiety, AR 750, 752; and plaintiff stopping his antidepressant because of its effects on him while in school, AR 2613. In each of these cases, the ALJ minimized both plaintiff's self-reported symptoms and plaintiff's providers' objective findings. In doing so, he cited selected normal observations, such as unimpaired memory, attention, and concentration, AR 753. But the ALJ relied primarily on plaintiff's continued attendance at school. AR 31-32. As discussed above, the record contains few details about plaintiff's ability to perform at school; the record thus does not support a finding of "good medication management" that rests on the bare facts of plaintiff's school attendance and 2.46 grade-point average. Similarly, the ALJ appears to have "cherry picked" several normal mental-status findings from amid a record that as a whole contains far more evidence of anxiety and panic disorder. *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) ("the ALJ improperly cherry-picked some of [the doctor's] characterizations of [the claimant's] rapport and demeanor instead of considering these factors in the context of [the doctor's] diagnoses and observations of impairment"); *see* AR 754, 905, 1023, 1026, 1683 (noting pressured speech, anxious mood and affect, psychomotor agitation, racing thoughts, and reports of panic symptoms while being fired); AR 252 (continuing VA service connection for anxiety, with 50 percent disability rating).

The ALJ thus lacked a legitimate and supported reason to find Dr. Wingate's opinion inconsistent with other evidence in the record. This error requires reversal.

Because this error requires remand to reconsider "as a whole" the medical evidence of plaintiff's limitations, the Court applies this reasoning to plaintiff's assignments of error

regarding the ALJ's discussion of the remaining treating, examining, and reviewing medical sources concerning plaintiff's psychological conditions.

### 2. Plaintiff's Physical Conditions

The ALJ also erred in considering the medical evidence pertaining to plaintiff's physical conditions.

With respect to several of the medical opinions regarding his physical conditions, plaintiff's arguments challenging the ALJ decision are too cursory for this Court to effectively review. This court will not address issues that a party does not argue with specificity in its briefing. *Carmickle v. Commissioner of Social Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008); *see Paladin Associates., Inc. v. Montana Power Co.*, 328 F.3d 1145, 1164 (9th Cir. 2003) (by failing to make argument in opening brief, objection to grant of summary judgment was waived); *Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) (matters not specifically and distinctly argued in opening brief ordinarily will not be considered).

Nonetheless, the Court has considered plaintiff's arguments to the extent it can discern them and concludes that the ALJ erred in analyzing evidence of plaintiff's physical limitations, as well.

*Examining Physicians: Frederick P. Vandusen, D.O., and Bradley E. Waite, D.O.*

Dr. Vandusen completed several Veterans Administration (VA) questionnaires in December 2015, opining on plaintiff's impairments. AR 1459, 1497, 1506. He found that a 2013 sleep study showed plaintiff had breathing problems constituting "moderate sleep apnea." 1459. He opined that this would have some effect on plaintiff's ability to work, in the form of "decreased concentration and increased headaches." *Id.* Evaluating plaintiff's back conditions, Dr. Vandusen found that plaintiff suffered from lumbar strain with invertebral disc syndrome,

and that this condition affected his ability to work by causing decreased sensation and range of motion and increased pain. AR 1497, 1506.

Dr. Waite examined plaintiff in February 2016. AR 729. He observed that plaintiff showed pain behavior in performing certain movements. AR 728. He noted that although plaintiff walked slowly and held his head and neck rigidly, he was able to heel walk and toe walk. He found that plaintiff reported numbness in his fingers but was able to use them in a range of tasks and showed full grip strength. AR 730. He concluded plaintiff's pain complaints were "somewhat out of proportion to the physical findings." AR 731. Dr. Waite opined that plaintiff did not have standing and walking limitations; that he was limited to lifting and carrying 20 pounds occasionally and 10 pounds frequently; that plaintiff could not reach above shoulder level with his right arm and had a limited ability to reach above should level with his left arm; and that plaintiff did not have handling limitations. AR 731.

The ALJ considered these opinions together. He gave "[l]ittle weight" to Dr. Vandusen's opinion. AR 35. He noted that plaintiff "presented with much more weakness and difficulty than in prior VA exams." AR 34. Accordingly, he found that during Dr. Vandusen's examination plaintiff "appears to have presented as more limited than he actually was." AR 35. He also found that Dr. Vandusen "was unable to consider [plaintiff's presentation] in context" because he did not have the benefit of Dr. Waite's exam. AR 35. Finally, the ALJ found that Dr. Vandusen's opinion "lacked precision in regards to the plaintiff's capabilities." AR 35.

On the other hand, the ALJ gave great weight to Dr. Waite's opinion. AR 35. He found that it was consistent with Dr. Waite's clinical observations and medical testing in the record. He also found that Dr. Waite's opinion was consistent with plaintiff's "disinterest in medical testing for his cervical spine and carpal tunnel syndrome, as well as the disinterest in attending physical

therapy." AR 35. He found Dr. Waite's opinion consistent with the plaintiff's activities, including driving and attending school. He also noted that Dr. Waite considered some of plaintiff's medical records. AR 35.

The ALJ erred in weighing Dr. Vandusen and Dr. Waite's opinions. First, the ALJ was mistaken in finding that Dr. Vandusen based his opinion on plaintiff's "presentation," which the ALJ found showed plaintiff to be "more limited than he actually was." AR 35. This reasoning is circular: the ALJ cannot justify discounting an opinion about plaintiff's limitations simply because it is inconsistent with the opinion the ALJ already holds about plaintiff's limitations. Moreover, this reason is not supported: Dr. Vandusen's evaluations show that he based his opinion on a combination of factors that included objective testing; he did not base his opinions solely on plaintiff's "presentation." *See* AR 1499-1503.

Second, the ALJ's finding that Dr. Vandusen's opinions "lacked precision" was not fully supported. Although Dr. Vandusen stated his opinion quite succinctly, the ALJ could infer that by limitations from "decreased ROM" Dr. Vandusen was referring to his findings, earlier in the evaluation form, indicating plaintiff's range of motion in flexing and extending his back was significantly restricted. AR 1499-1500.

Nor did the ALJ give a legitimate reason for discounting Dr. Vandusen's opinion in comparing it with Dr. Waite's opinion. The ALJ, despite affording "great weight" to Dr. Waite's opinion, did not actually incorporate it in the RFC. Whereas Dr. Waite opined that plaintiff could not reach above shoulder level with his right arm and was limited in reaching above should level with his left arm, the RFC does not include these clear limitations and instead states that plaintiff "can occasionally reach overhead bilaterally." AR 24, 731.

ORDER REVERSING DEFENDANT'S DECISION TO
DENY BENEFITS AND REMANDING FOR FURTHER
PROCEEDINGS - 13

*VA Disability Rating*

An ALJ must consider the VA's findings in reaching a decision and must normally give the VA's finding of disability great weight. *Luther v. Berryhill,* 891 F.3d 872, 876 (9th Cir. 2018). The VA rating of disability is not conclusive and does not require the Commissioner of Social Security to come to the same result. *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002). The two disability programs are similar: "Both programs evaluate a claimant's ability to perform full-time work in the national economy on a sustained and continuing basis; both focus on analyzing a claimant's functional limitations; and both require claimants to present extensive medical documentation in support of their claims." *Id.*

Therefore, the ALJ must provide "'persuasive, specific, valid reasons'" to assign less weight to the VA disability rating, and the record must support those reasons. *Berry v. Astrue*, 622 F.3d 1228, 1236 (9th Cir. 2010) (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694-95 (9th Cir. 2009)). The "acquisition of new evidence or a properly justified reevaluation of old evidence" can constitute such a reason. *Valentine*, 574 F.3d at 695. For example, the Ninth Circuit has upheld an ALJ's reasoning in "rejecting the VA's disability rating on the basis that she had evidence the VA did not, which undermined the evidence the VA did have." *Id.* But where an ALJ errs in assessing medical evidence that the VA considered, the ALJ also errs in rejecting the VA rating based on that evidence. *See id.*

Here, the VA assigned plaintiff a combined 100 percent disability rating as of December 14, 2014. AR 255, 334. The VA assigned a 50 percent disability rating for anxiety, depression, and alcohol use disorder; a 50 percent rating for sleep apnea; 40 percent for lumbar strain with intervertebral disc syndrome (not considered permanent); 30 percent for cervical spine degenerative disc disease; and 10 percent for coronary artery disease. AR 250-53, 336-40.

The ALJ assigned "very little weight" to the VA's ratings decision. The ALJ first stated that the VA ratings "are poor information on which to determine an individual's function by function analysis." AR 33. The ALJ later added, "there are opinions in the record that do give more functionally specific information," pointing to three other opinions. *Id.* The ALJ's reasoning appears to apply to *all* VA disability ratings. But the Ninth Circuit has repeatedly stated that an ALJ must give "'persuasive, specific, valid reasons,'" supported by the evidence, to discount a VA disability rating. *Luther*, 891 F.3d at 877; *Valentine*, 574 F.3d at 695. Thus, the ALJ's statements that the VA ratings are "poor information" and that other opinions "give more functionally specific information" do not constitute a valid or specific reason for rejecting the VA disability ratings in this case. *Cf. Carinio v. Berryhill,* 736 Fed. Appx. 670, 674-75 (9th Cir. 2018) (distinguishing *Luther* and holding that the ALJ's two reasons for giving limited weight to the VA rating were sufficient: the VA rating was based on evidence that was different from what the ALJ reviewed, and the VA rating was a two-page conclusion without analysis).

The ALJ also gave several reasons for finding that certain conditions, which the VA had given partial disability ratings, were not that severe. These conditions included tinnitus, a hiatal hernia, hypertensive vascular disease, and sleep apnea. AR 33. But the ALJ did not address the VA ratings for plaintiff's anxiety or spine strain, to which the VA gave ratings of 50 percent and 30-to-40 percent, respectively. *See* AR 251-53.

Accordingly, the ALJ failed to give persuasive, specific, and valid reasons to discount plaintiff's VA disability ratings.

B.     The ALJ's Assessment of Plaintiff's Subjective Testimony

Plaintiff also contends that the ALJ erred in discounting his subjective testimony.

To reject a claimant's testimony regarding self-reported symptoms, the ALJ must provide clear and convincing reasons. *Burrell v. Colvin*, 775 F.3d 1133, 1137 (9th Cir. 2014). The ALJ

must state what testimony he or she determined to be not credible and point to the evidence that undermines the plaintiff's credibility. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Individuals do not all experience the same condition in exactly the same way, and different individuals may be more or less limited by symptoms than other individuals. SSR 16-3p, 2016 WL 1119029 at *4.

The United States Court of Appeals for the Ninth Circuit uses a two-step inquiry for determining whether and to what extent the claimant's testimony about severity of symptoms must be credited:

- First, has the claimant presented objective medical evidence of an impairment that reasonably could produce the pain or other symptoms alleged? The claimant is not required to show that the impairment could reasonably be expected to result in the exact severity of symptoms that the claimant alleges; the claimant is only required to show that the impairment could reasonably have caused some degree of the symptoms. The claimant is not required to produce objective medical evidence of the specific symptoms (for example, pain) or the severity thereof.
- Second, if the first step is satisfied and there is no evidence of malingering, then the Court asks: has the ALJ provided clear and convincing reasons for rejecting the claimant's testimony about the severity of symptoms?

*Trevizo v. Berryhill,* 871 F.3d 664, 678 (9th Cir. 2017).

The Court has determined that the evidence concerning plaintiff's psychological and physical conditions, as well as the VA ratings, was erroneously discounted, and on remand the ALJ is directed to re-assess the plaintiff's testimony in light of the re-evaluated mental and physical health evidence, as well as the VA ratings.

C.   The ALJ's Assessment of Lay Witness Testimony

Plaintiff also contends that the ALJ erred in rejecting lay-witness testimony about his impairments. Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel,* 236 F.3d 503, 511 (9th Cir. 2001). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. *Id.* at 512. The ALJ also may "draw inferences logically flowing from the evidence." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

The ALJ erred in reviewing the evidence that pertains to the plaintiff's mental and physical health, and VA ratings, as discussed above. On remand, the ALJ is directed to re-evaluate the lay witness testimony in light of the re-evaluation of the mental health, physical health, and VA ratings evidence.

D.   Remand for Further Proceedings

The Court may in its discretion remand this case "either for additional evidence and findings or to award benefits." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996); *see Trevizo*, 871 F.3d at 682. If an ALJ makes an error and there is uncertainty and ambiguity in the record, the district court should remand to the agency for further proceedings. *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2018). If the district court concludes that additional proceedings can remedy the errors that occurred in the original hearing, the court should remand the case for further consideration. *Revels v. Berryhill,* 874 F.3d 648, 668 (9th Cir. 2017).

The Ninth Circuit has developed a three-step analysis for determining when to remand for a direct award of benefits. Such remand is generally proper only when all three of the following criteria are met:

- First, "the record has been fully developed and further administrative proceedings would serve no useful purpose;"
- Second, "the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion;" and
- Third, "if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand."

*Trevizo*, 871 F.3d at 682-83 (quoting *Garrison*, 759 F.3d at 1020).

If, after considering all of those questions, it appears that a remand would be unnecessary, the district court still has discretion to remand for additional proceedings if, considering the record as a whole, there are reasons for serious doubt as to whether the claimant is disabled. *Leon*, 880 F.3d at 1045.

Here, plaintiff asks that the Court remand for an award of benefits, but he did not address the above criteria in his briefing. *See* Dkt. 10, p. 19; Dkt. 12. In addition, the Court is not persuaded that "further proceedings would serve no useful purpose." *See Trevizo*, 871 F.3d at 682-83. Nor is it clear that the Commissioner would be required to find plaintiff disabled if the improperly rejected evidence is credited as true. Accordingly, remand with an instruction to award benefits is not appropriate.

## CONCLUSION

Based on the foregoing discussion, the undersigned finds error in the ALJ's determination that plaintiff was not disabled. Defendant's decision to deny benefits is therefore

REVERSED and the matter remanded for further administrative proceedings. On remand, the ALJ must re-evaluate plaintiff's RFC, and whether it causes him to be disabled at step five, based on the evidence of plaintiff's limitations from both psychological and physical conditions. This will require the ALJ to re-weigh the medical opinion evidence, the VA disability ratings, plaintiff's subjective symptom testimony, and the lay witness testimony.

Dated this 25th day of October, 2018.

*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge

ORDER REVERSING DEFENDANT'S DECISION TO
DENY BENEFITS AND REMANDING FOR FURTHER
PROCEEDINGS - 19